UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,                  Case No. 5:22-cr-20112

                                      District Judge Judith E. Levy

v.                               Magistrate Judge Kimberly G. Altman

VAN CULVER,

     Defendant.

_____/

## <u>REPORT AND RECOMMENDATION TO DENY<br>DEFENDANT'S MOTION TO SUPPRESS (ECF No. 15)</u>

### I.     Introduction

This is a criminal case. Defendant Van Culver (Culver) has been indicted for unlawful possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). Culver now moves to suppress all tangible evidence as well as statements he allegedly made to law enforcement officers. (ECF No. 15). As will be explained, Culver contends that after a car accident, an officer opened his passenger door, conducted an illegal search of his vehicle, and illegally seized a firearm. (*Id*.). In its response, the government argues that the search of the vehicle was subject to the community caretaker exception to the Fourth Amendment's prohibition against unreasonable searches and seizures, and that the firearm was initially seized to

1

promote the safety of the officers. (ECF No. 20). Culver was not explicitly placed under arrest until after the officers confirmed that he did not possess a Concealed Pistol License (CPL). (*Id.*). It was later confirmed that Culver was a felon, which forbids him from possession of a firearm under federal law. (*Id.*).

Before the Court is Culver's motion to suppress tangible evidence as the fruits of an illegal search of the vehicle, *Wong Sun v. United States*, 371 U.S. 471 (1963), and an illegal seizure of Culver's firearm in violation of the Fourth Amendment, *Terry v. Ohio*, 392 U.S. 1 (1968). (ECF No. 15). Under 28 U.S.C. § 636(b)(1), this motion has been referred to the undersigned. (ECF No. 19). The motion is fully briefed, (ECF Nos. 15, 20, 24), and an in-person hearing was held on September 28, 2022, (ECF No. 26). For the reasons that follow, the undersigned RECOMMENDS that Culver's motion be DENIED.

## II. Factual Background

The parties do not dispute that Culver was found in the driver's seat of a vehicle that had crashed into a tree after crossing a sidewalk. This occurred at approximately 1:00 AM on Sunday, November 28, 2021, in what Culver describes as a snowstorm. (ECF No. 15, PageID.39; ECF No. 20, PageID.59). Culver was found unconscious behind the wheel of the vehicle, but was eventually woken by Officer Williams, who had opened the driver's side front door to check on the

driver of the vehicle.  (Ex. B and C at 0:36-1:00) (body camera footage submitted to the Court by the government)).

About ten seconds after Williams opened the driver's side door, Officer Howells opened the passenger side front door, which revealed a beer can and a firearm in plain sight on the passenger seat.  (*Id.*; ECF No. 20, PageID.60 (photograph in the government's brief)).  Howells seized the firearm.  Culver was then awoken, said that he had not been drinking, and was placed in the squad car, though he was not otherwise restrained or arrested at that time.  The officers then searched his truck, finding some empty and some unopened alcohol containers. (Ex. B and C, 1:01-13:00).

As Culver notes in his motion, the officers detaining him seemed to be unsure how to charge him and how to justify searching his car after finding the firearm.  (ECF No. 15, PageID.47).  The officers first stated that they had probable cause to search the car based on the firearm, but then stated that the search was justified because "we got to tow it anyways."  (Ex. B and C, 8:30-14:00).  They also wondered aloud what they would be arresting him for, first suggesting "improper transport," then "Driving While Intoxicated" (though they admitted they did not know if he was intoxicated at that time), and finally "carrying a concealed weapon," at which time they asked Culver whether he possessed a permit for the firearm.  (*Id.*).

The government states that this discussion was an instance of a rookie officer, Howells, seeking guidance from Williams, who was his field training officer, as a part of learning the job.  (ECF No. 20, PageID.62).  After inspecting the vehicle further, Officer Howells returned to Culver to ask if he had a concealed carry permit, and Culver stated that he did not.  (Ex. B and C, 14:02-14:11). Howells returned to Culver's vehicle to get the vehicle identification number (VIN), and then handcuffed Culver, placing him under arrest.  (Ex. B and C, 16:45-17:55).

### III.    Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  "Warrantless searches are presumptively unreasonable under the Fourth Amendment."  *United States v. Ukomadu*, 236 F.3d 333, 337 (6th Cir. 2001).  "While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police."  *New York v. Class*, 475 U.S. 106, 114–15 (1986).

The exclusionary rule "often requires trial courts to exclude unlawfully seized evidence in a criminal trial" when the violation arises under the Fourth

Amendment.  *Utah v. Strieff*, 579 U.S. 232, 237 (2016).  Under the "fruit of the poisonous tree" doctrine, the Court must suppress any "evidence later discovered and found to be derivative of an illegality."  *Strieff*, 579 U.S. at 237 (quotations omitted).

## IV.   Discussion

Culver contends that the opening of the passenger side door was a warrantless search, and that there was no justification for Officer Howells to do so. Culver also contends that the seizure of his firearm, before having reason to suspect that it was possessed illegally, was unlawful.

The government contends that officers had authority to open Culver's driver and passenger side door under the *community caretaker exception* to the Fourth Amendment,[1] and that Officer Howells was justified in seizing the firearm (a) because it posed an immediate threat to officer or public safety, and (b) on the basis of reasonable suspicion that Culver was violating Michigan law by carrying a pistol inside a vehicle.

---

[1] The government argues in a footnote that while the community caretaker exception is the most appropriate way to evaluate the case, the officers would also have had probable cause to search the vehicle to investigate whether Culver was operating while intoxicated, given that he drove into a tree and was asleep at the wheel just before 1:00 AM on a Sunday.  (ECF No. 20, PageID.63).  This potential avenue is undercut by the admission of government's counsel at the hearing that there was no reason for an officer to open Culver's passenger side door aside from checking on his well-being.

The parties' arguments at the hearing focused foremost on the application of the community caretaker exception to the Fourth Amendment's presumptive prohibition on warrantless searches. There was also in-depth discussion of the inevitable discovery doctrine. The Court will address all of the arguments raised in the parties' briefs.

## A.    Culver's Initial Arguments

Culver argues that Officer Howells' opening of the passenger side door was a search and that this search was unreasonable. In support of this argument, Culver cites *New York v. Class*, 475 U.S. 106, 114–15 (1986), in which an officer opened the door of a vehicle that had been pulled over for speeding in order to locate the VIN. In *Class*, the officer spotted the handle of a gun protruding from under the driver's seat while searching for the VIN on the interior of the car. The Supreme Court held that opening the vehicle's door constituted a search, but that the search was reasonable because the governmental interest in obtaining the VIN was "of the first order," and the search was "focused in its objective and no more intrusive than necessary to fulfill that objective." *Id*. at 118.

Culver distinguishes this aspect of *Class* by noting that here, there was no initial search for a VIN or any other important evidence that would render officer Howells' search of the car reasonable. Culver also cites *United States v. Jones*, No. 1:19-CR-20693, 2021 WL 2156195, at *3 (E.D. Mich. May 27, 2021), in

which an officer opening a car's driver's side door during a traffic stop constituted a search for purposes of the Fourth Amendment (though the court found that the eventual search of defendant's person was consented to, not conditioned upon the prior search, and thereby legal).  The government responds that while a search did take place, it was justified by the officers' concern for Culver's well-being, and that the discovery of Culver's unlicensed firearm was inevitable even if Officer Howells had not initially opened Culver's passenger side door.

### B.    The Community Caretaker Exception

"The community-caretaking exception applies most clearly when the action of the police is 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " *United States v. Lewis*, 869 F.3d 460, 463 (6th Cir. 2017) (quoting *United States v. Brown*, 447 F. App'x 706, 709 (6th Cir. 2012)).  "[T]he police play a critical role not just in 'preventing violence and restoring order,' but in rendering emergency aid pursuant to the police force's role as community caretakers." *United States v. Washington*, 573 F.3d 279, 287 (6th Cir. 2009) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006)).

The government finds support in *Lewis* for its argument that the community caretaker exception applies, noting the factual similarities.  In *Lewis*, police officers were dealing with an intoxicated individual inside of a Wal-Mart.  She said

that her boyfriend was outside of the Wal-Mart waiting for her in his truck.  In

seeing if the boyfriend, Lewis, could drive her home, the officers found him asleep

in the passenger seat of his truck, and an officer opened the passenger side door to

check on him.  Upon opening the door, Lewis awoke; he tossed a plastic baggie

into the back floorboard of the vehicle, and officers ultimately opened the back

door and investigated the baggie, which contained illicit pills.  *Lewis*, at 461-62.

After considering the facts of the case and applicable caselaw, the Sixth

Circuit held that this search (the opening of the passenger side door) was

reasonable, as "the Fourth Amendment does not impose technical prerequisites

upon such a natural act of community service."  *Id*. at 461.  The court stated that

officers were not required to "knock on the truck window or attempt to speak with

Lewis before opening the door" because "the community caretaking exception is

not limited to the least intrusive means of protecting the public."  *Id*. at 464.

In his reply brief and at the hearing, Culver distinguished *Lewis*, arguing that

Officer Howells made no apparent effort to check on Culver, as it was Officer

Williams on the driver's side of the vehicle engaging with Culver, asking if he was

okay, and removing the keys from the ignition.  Culver stressed that Officer

Howells was barely communicating with Culver and not rendering aid, and only

"after securing the firearm, Officer Howells joined Officer Williams to wake

Culver," citing the government's description of events.  (ECF No. 20, PageID.61).

The government countered that Officer Howells spotted the firearm immediately upon opening the passenger side door, the seizure of which naturally became his priority while Officer Williams was engaged with Culver.

At the hearing, counsel for Culver argued that Officer Howells should not be able to avail himself of the community caretaker exception to his search when he did nothing to render aid or provide a "natural act of community service." *Lewis*, 869 F.3d at 461. He contended that with Officer Williams already tending to Culver from the driver's side of the vehicle, and spotting Culver slouched over at the wheel, a reasonable response for Officer Howells would have been to contact emergency medical services to request an ambulance and then join Officer Williams at the driver's side of the vehicle to render aid.

The government responded that body camera footage shows a tree and bushes next to the driver's side door, making it potentially impractical for Officer Howells to join Officer Williams in aiding Culver from that direction. The government also notes that Culver ultimately did not need medical attention, and that the community caretaker exception does not require that officers engage in "the least intrusive means of protecting the public." *Id*. at 464.

The Court acknowledges that both *Class* and *Lewis* are distinguishable from this case in that officers began to render aid in those cases from the same side of the vehicle as the occupant. This, of course, makes sense when a single officer is

approaching a vehicle with concern for its occupant.  However, it is unclear that

this difference matters for purposes of the reasonableness of Officer Howells'

actions, especially because he was the second officer arriving at the vehicle.

Further, while calling for an ambulance could have been reasonable under the

circumstances, it was not unreasonable for Officer Howells to first approach the

vehicle and open the passenger side door to assess Culver's condition.  Nor would

it have made sense for Officer Howells to approach from the same side as Officer

Williams, especially given the surrounding environment.  It is also reasonable, as

will be discussed below, that Officer Howells did not render aid to Culver upon

opening the door, due to the immediate discovery of a firearm on the passenger

seat, as well as Officer Williams' engagement with Culver.  Culver's suggested

less-intrusive means of assisting in the situation are unavailing, because Officer

Howells was not required to use the least intrusive means necessary, and because

his actions were ultimately reasonable.  Thus, Officer Howells' actions fall within

the community caretaker exception.

### C.     Unlawful Firearm Seizure

Culver also argues that the seizure of his firearm was unlawful, as there was

no probable cause that a crime had been committed.  Michigan allows concealed

carry of a pistol with the proper permit, Mich. Comp. Laws § 28.425f (1) and (2);

therefore, according to this argument, police officers were not authorized under

*Terry v. Ohio, supra*, to seize the firearm or conduct a stop or frisk of Culver's person based on finding it.

In support of this argument, Culver relies on *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1131-33 (6th Cir. 2015). The *Northrup* court held that, under Ohio gun laws, officers need evidence of criminality or dangerousness before they can detain and disarm a law-abiding citizen. However, caselaw from the Sixth Circuit and the Eastern District of Michigan has distinguished *Northrup* based on the differences in state law between Ohio and Michigan. In Ohio, carrying a firearm is presumptively legal, whereas in Michigan, it is a prima facie violation of state law that is rebuttable by raising the issue of licensure and offering proof that the possession was lawful. *See United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011); *United States v. Williams*, 483 F. App'x 21, 27 (6th Cir. 2012) (citing *People v. Henderson,* 391 Mich. 612, 218 N.W.2d 2, 4 (1974)); *United States v. Ferguson*, No. 19-3894, 2020 WL 10140803, at *3 (6th Cir. June 3, 2020), *cert. denied*, 210 L. Ed. 2d 937, 141 S. Ct. 2812 (2021).

This difference in legal presumptions has been noted by numerous judges in this district. *See, e.g.*, *United States v. Graham*, No. 21-CR-20433, 2022 WL 4099447, at *5 (E.D. Mich. Sept. 7, 2022) ("*Northrup* dealt with the *open* carrying of a gun in *Ohio*, whose law did not create a rebuttable presumption that such practice was illegal and did not even require gun owners to carry their licenses."

(emphasis in original)); *United States v. Stevenson*, No. 21-20375, 2021 WL 5585921, at *4 (E.D. Mich. Nov. 30, 2021) (acknowledging "the presumption [under Michigan law] that it is unlawful for a firearm to be concealed in a vehicle[.]"); *United States v. Lamb*, No. 16-20077, 2016 WL 4249193, at *3 (E.D. Mich. July 6, 2016), *report and recommendation adopted*, 2016 WL 4191758 (E.D. Mich. Aug. 9, 2016) ("Michigan law regarding carrying a firearm in a car is not on all-fours with *Northrup's* description of the Ohio law that absolves those openly carrying a firearm from having to produce a license to do so."); *United States v. Bridges*, No. 16-20089, 2016 WL 3922354, at *6 (E.D. Mich. July 21, 2016) (noting distinction between Ohio laws in *Northrup* and Michigan's presumed illegality of carrying a concealed pistol).  Thus, *Northrup* does not support Culver's argument that his possession of the firearm was presumptively lawful.

The seizure of Culver's firearm was also justified as it posed an immediate threat to officer or public safety.  "[A] police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety."  *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003).  Given firearms' "inherently dangerous nature," this

standard applies "even if a loaded handgun is legally possessed." *United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007).

The government cites numerous district and circuit court cases holding that it is justifiable to temporarily seize a firearm within an individual's reach.  (ECF No. 20, PageID.67-69).  This is true even where an individual is handcuffed (*United States v. Isham*, 501 F.2d 989, 991 (6th Cir. 1974)) or asleep (*United States v. Harris*, 747 F.3d 1013 (8th Cir. 2014)), and the "plain view" analysis is not altered by Howells' use of a flashlight to detect the firearm (*Texas v. Brown*, 460 U.S. 730, 739–40 (1983); *United States v. Brooks*, No. 21-20369, 2022 WL 19186, at *5 (E.D. Mich. Jan. 3, 2022); *United States v. Willis*, 37 F.3d 313, 316 (7th Cir. 1994)).  Thus, once spotted in plain view, Culver's firearm was subject to seizure by Officer Howells based on both the presumption of unlawful carry and the justifiable safety concern.

### D.      Unlawful Detention or Arrest

In his reply brief, Culver focuses much attention on his allegedly unlawful detention or arrest when he was placed in the police car after discovery of the beer can and firearm on the passenger seat before the officers more thoroughly searched the vehicle.  The government contends that this was reasonable, and that "[d]etention in a police car does not automatically constitute an arrest." *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir. 1996).  Culver counters that

13

"detention in a police car may rise to the level of an arrest under some circumstances," and that in some instances, "a motorist could not be lawfully detained in a police car once the purposes of the initial traffic stop were completed." *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). Pointing to the body camera footage, Culver argues that his detention was not reasonable or pursuant to the purpose or objective of the stop because Officer Williams, who ordered Culver into the car, did not learn of the firearm until after placing Culver in the vehicle.  (Ex. B and C, 8:30-8:34).

In furtherance of the unlawful detention argument, Culver again cites *Northrup*, as well as *United States v. Floyd*, No. 21-CR-20010, 2021 WL 2805806 (E.D. Mich. July 6, 2021) and *United States v. Watson*, No. CR 19-20296, 2019 WL 3776818 (E.D. Mich. Aug. 9, 2019), as examples of circumstances where a concealed pistol does not justify detention.  Each of these cases is distinguishable. As noted *supra*, *Northrup* is not applicable under Michigan's concealed carry scheme.  Regarding *Floyd* and *Watson*, each involves an officer conducting a personal search or frisk of the individual to find a firearm on their person *before* inquiring whether the individual had a concealed carry permit.  The courts found those searches to be unsupported by reasonable suspicion.  But here, Culver's firearm had already been found in plain view.

14

Along these lines, the legality of Culver's initial detention in the squad car is irrelevant. The firearm was not found pursuant to Culver's detention, the officers frisking of him, the subsequent search of the vehicle, or his explicit arrest thereafter. The officers became aware of the firearm before these acts and knew of it when he was asked about having a concealed carry permit. Thus, neither the firearm nor the admission from Culver that he did not have a permit for it were fruits of the allegedly unlawful detention. *See Bridges*, *supra*, at *7 (citing *Galaviz*, *supra*, 645 F.3d at 354).[2]

### E. The Inevitable Discovery Exception

Finally, there is much discussion from both parties regarding the inevitable discovery doctrine. Under the "inevitable discovery doctrine," "evidence may be admitted if the government can show that the evidence inevitably would have been

---

[2] Similarly, in *Galaviz*, the court noted that

> the gun was discovered by police officers who arrived at the scene in response to Webber's call for backup. Those officers observed the gun either while Webber was still searching for Galaviz inside the house, or contemporaneous with the arrest of Galaviz in the basement. They discovered the gun because it was in plain view, and not as a result of anything Galaviz said or anything found on Galaviz's person after his detention. Although Webber's pursuit of Galaviz was a but-for cause of the officers' discovery of the gun, the gun is not a fruit of the seizure as defined by *Wong Sun* and progeny.

645 F.3d at 354. When the seized firearm was found in plain view unconnected to a defendant's allegedly unlawful seizure or detention, it should not be suppressed on that basis.

obtained from lawful sources in the absence of the illegal discovery." *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (citing *United States v. Leake,* 95 F.3d 409, 412 (6th Cir. 1996)).  The government argues that due to Culver's vehicle having been badly damaged, the firearm would have inevitably been discovered in the eventual inventory search in relation to impounding and towing the vehicle anyway.

Culver contends that this argument is speculative, and that "[i]nevitable discovery involves no speculative elements."  *Nix v. Williams*, 467 U.S. 431, 444–45 n.5 (1984).  He notes that the model of truck that Culver was driving is typically equipped with a spare tire and may not have needed a tow, and that based on the facts of the case, it is not inevitable that an inventory search would have resulted in discovery of the firearm, which was not initially discovered by Officer Williams, nor by Officer Howells prior to opening the passenger side door.

This is a closer call.  The openness with which the firearm sat on the passenger seat suggests that had Officer Howells not opened the passenger door, it would still have been discovered through the driver's side door after Culver exited the vehicle.  Further, it could easily have been discovered through the passenger side window had an officer given it more attention prior to opening the door.  The fact that Culver's vehicle had been sitting there for a period of time before the officers arrived also suggests that a tow would have been needed eventually, and

an inventory search prior to the tow would clearly have exposed the firearm. However, the Court recognizes that this inquiry involves speculation.  There is no testimony from the officers regarding how open and obvious the weapon appeared to them at the time, whether the passenger seat was visible to Officer Williams when Culver exited the vehicle, or regarding any typical police procedures as to vehicle towing and inventory search procedures.  Nor has the government presented any written procedures regarding towing and inventory searches from the Detroit Police Department.

For these reasons, the Court finds that it need not reach the issue of inevitable discovery, because the independent holdings above justify the discovery and seizure of the firearm, specifically under the community caretaker exception.

## V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Culver's motion to suppress, (ECF No. 15), be DENIED.


Dated: October 18, 2022                    s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Isaac v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 18, 2022.

s/Julie Owens
Julie Owens
Case Manager
